NOTE--Taken to United States Supreme Court by writ of error.

---

## No. 12,944.

### State of Louisiana ex rel F. W. Kinberger et als. vs. Mayor and Council of New Orleans.

51　99
52 1607

51　99
105　515

#### Syllabus.

From the differing provisions, clear and pronounced, in the two charters of the city of New Orleans (that of 1882 and that of 1896) respecting the membership of the City Council, and the reservation made in the charter of 1896 relative to the Council in office at the date of its passage, and the care observed to continue in force existing laws not inconsistent with the later enactment, is deduced the legislative intent that the change in the manner of filling vacancies in the Council as provided in the later charter over what it was in the earlier one, was to apply to city councils to be thereafter elected, and not to the Council then and now in existence.

O N APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*G. W. Flynn* and *Lazarus, Moore & Luce* for Plaintiffs, Appellees.

*Samuel L. Gilmore*, City Attorney, for Defendants, Appellants.

Argued and submitted November 11, 1898.
Opinion handed down December 5, 1898.
Rehearing refused January 9, 1899.

The opinion of the court was delivered by

BLANCHARD, J.   The relators, duly qualified electors of the First Representative District of the city of New Orleans, and property taxpayers therein, invoke the writ of *mandamus* to compel the Mayor and Council of said city to order an election in said representative district for member of the city council, to fill the vacancy occasioned by the resignation of Quitman Kohnke, who had been elected councilman from said district at the general election in April, 1896.

The contention on part of plaintiffs is that the same constituency which in 1896 accredited Dr. Kohnke to the council, alone have the right and authority to name his successor, now that he has resigned.

The contention on part of defendants and respondents is that this vacancy is not to be referred to the electors of the First Representative District, to fill the same by election, but that said vacancy is to be filled by the City Council itself, the members thereof choosing *viva voce* a citizen therefor possessed of the requisite legal qualifications.

A petition to the mayor and council by certain electors of the First District, praying that an election be ordered to fill the vacancy, having been denied, this suit was brought in the Civil District Court to enforce the right of election.

State ex rel. Kinberger vs. Mayor of New Orleans.

From the decision of that court making peremptory the writ of mandamus and directing the mayor and council to order the election, this appeal is prosecuted.

The election for mayor and councilmen had in 1896, was held under the provisions of the then existing charter of the city, which had been adopted in 1882.

Under that charter the legislative power of the city was vested in a council composed of thirty members, who should be residents of the districts from which elected. The city was divided up into representative and municipal districts and the thirty councilmen provided for apportioned among the same. The councilmen were elected for four years and were to serve without compensation. Vacancies were to be filled by election, and it was made the duty of the mayor, and in case of failure on his part, of the council, to at once order an election to fill the same. The same constituency that had elected the former holder of the seat was to be called on to fill the vacancy.

The same mayor and council elected in 1896 are holding office now and will continue to until, at the general election of 1900, their successors are chosen.

Subsequent to their election in 1896, and in that year, a new charter for the city was provided by legislative act.

This new charter, it is claimed, effects a change in the manner of filling vacancies in the council, and Section 79 thereof is pointed to as the provision operating this change.

It provides that "vacancies occurring in the office of councilmen * * * * shall be filled by election viva voce by the council of a citizen having the qualification required for such office, and such person shall serve for the unexpired term of office."

If the present city council, from which Dr. Kohnke resigned, had been elected under, and held its tenure of office pursuant to, the Act No. 45 of 1896 (new charter), there would not be any doubt as to how vacancies occurring should be filled—at least so far as the intention of the act goes.

But since this council was elected under, and derives its tenure from, the earlier charter, it becomes important to enquire how far, or to what extent, it is affected by the provisions of the later charter.

The latter divides the city into seven municipal districts and provides for the election of seventeen councilmen therefrom, apportioning the same among the districts. These seventeen are to constitute

the City Council. Its members are to receive a compensation of twenty dollars each for attendance at each regular monthly meeting. They are to be elected at the same time the mayor is and for four years.

While the city is divided, by the present charter, into *representative* districts, there is no provision for the election of councilmen therefrom, except as the same may form part of the municipal districts.

It is, therefore, apparent that the constituencies respectively entitled to elect councilmen under the later charter are not identical with those which, under the earlier charter, elected the members of the present council.

While the act establishing the later charter announces it is to take effect after due promulgation thereof, it specially provides that the various municipal officers and councilmen elected at the general election in April, 1896, shall continue in office until the expiration of the term for which they were elected.

This preserves their status as officials elected and holding, as to their tenure, under the charter of 1882, and that this is so, is shown by the further announcement in the charter of 1896 that the *first* election under it shall be held on a certain Tuesday in April, 1900.

The last and repealing section of the act does not go to the extent of repealing all prior laws on the same subject matter, but rests content with the more moderate declaration that "all laws or parts of laws in conflict, or inconsistent herewith, are hereby repealed."

From the differing provisions, clear and pronounced, in the two charters, respecting the membership of the council, and the reservation made in the act of 1896 relative to the council in office at the date of its passage, and the care observed to continue in force existing laws not inconsistent with the later enactment, is to be deduced the legislative intent that the change in the manner of filling vacancies in the council as provided in the later charter over what it was in the earlier one, is to apply to city councils to be thereafter elected, and not to the council then and now in existence.

This interpretation is in direct accord with the views expressed and the decree rendered by this court in November, 1896, within a few months after the adoption of the new charter, in the case State *ex rel* Sarah Holsom vs. Henry Bezou, Recorder, etc., 48th La. Ann. 1384.

So long, therefore, as the present council holds office, vacancies occurring therein are to be filled pursuant to the provisions of the old

law, and Section 79 of the Act of 1896, providing a different mode of filling vacancies, is held suspended in its operation until the happening of the condition that alone can give it potency and force, viz.: the election of a new council under the provisions of the present municipal charter.

We pretermit, as unnecessary to the decision of the case, any expression of opinion on the constitutional question raised and discussed at the bar; that Section 79 of the charter of 1896 is repugnant to Article 253 of the Constitution of 1879, and in conflict with Articles 319 and 320 of the Constitution of 1898, in that it provides a different mode of choosing or appointing public officers "charged with the administration of the police of the city," as expressed in the earlier Constitution, or those "charged with the exercise of the police power and with the administration of the affairs of the city in whole. or in part," as expressed in the later Constitution.

The judgment appealed from is correct and is affirmed.